UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SPL SHIPPING LTD.,

                              Plaintiff,

        -v-                                          Case No. 06-CV-15375 (KMK)

GUJARAT CHEMINEX LTD., BLUE LINE                     OPINION & ORDER
CHEMICALS, MONTE BLUE INTERNATIONAL,
AND NIRMA LTD.,

                              Defendants.

<u>Appearances</u>:

Owen Francis Duffy, III, Esq.
Chalos, O'Connor & Duffy
Port Washington, NY
*Counsel for Plaintiff*

Francis H. McNamara, Esq.
Cardillo & Corbett
New York, NY
*Counsel for Defendant Nirma Ltd.*

KENNETH M. KARAS, District Judge:

        Defendant Nirma Ltd. ("Nirma") seeks to vacate an Order of Maritime Attachment

obtained by Plaintiff SPL Shipping Ltd., pursuant to the Federal Rules of Civil Procedure

Supplemental Admiralty Rule E(4)(f) ("Rule E(4)(f)"), and to dismiss the Complaint.  For the

following reasons, Defendant's Motion to Vacate the Attachment and Dismiss the Complaint is

DENIED.

<u>I.  Background</u>

        On December 21, 2006, Plaintiff obtained from this Court an Order of Maritime

Attachment against Gujarat Cheminex Ltd. ("Gujarat"), Blue Line Chemicals, Monte Blue International, and Nirma Ltd.  In the accompanying Verified Complaint, Plaintiff alleges that Plaintiff and Gujarat entered into a Charter Party dated October 6, 2006, for a one-time charter trip of about twenty-five to thirty days.  (Verified Compl. ¶ 11.)  Plaintiff has brought suit against Gujarat for "delays in discharging . . . cargo . . . [and] additional hire and charges to replenish bunker fuel . . . together with additional damages for loss in hire . . . ."  (*Id.* ¶ 19.)

Before the cargo was unloaded, however, Plaintiff received two payments of hire.  The first payment was made on November 4, 2006 and came from Nirma.  Nirma's payment of $329,950, according to Plaintiff, "was characterized [by Nirma] as a payment against freight certificate."  (*Id.* ¶ 14.)  The second payment was made on November 6, 2006, in the amount of $45,000 by Blue Line Chemicals, which Plaintiff alleges is the alter-ego of Monte Bleu International.  (*Id.* ¶ 15.)

Relying, in part, on Nirma's payment to Plaintiff for hire to a Charter Party that Nirma was not a party to, Plaintiff alleges that Nirma and Gujarat are alter-egos of one another.  (*Id.* ¶¶ 25, 27.)  In addition, Plaintiff alleges that "there existed such unity of ownership and interest . . . that no separation exists between" Nirma and Gujarat, such that the "corporate form has been disregarded" (*id.* ¶ 25); that Nirma and Blue Line Chemicals have paid hire to other vessel owners in the past, even though they were not signatories to the charter party (*id.* ¶ 27); that Nirma and Blue Line Chemicals were the actual charterers of the vessel in this case (*id.* ¶ 26); and that "[a]t all material times, Defendants BLUE LINE and NIRMA have dominated and used Defendant GUJARAT for their [sic] own purposes such that there is no meaningful difference between the three entities and there has been an intermingling of funds between the several

2

entities" (*id.* ¶ 28).

Nirma denies that it is the alter-ego of Gujarat.  Nirma maintains that it was merely a sub-charterer to Gujarat, and that Nirma's payment to Plaintiff of $329,950 satisfied its obligations as a sub-charterer to Gujarat.  Nirma explains that Gujarat requested that Nirma's payment be made directly to Plaintiff, rather than to Gujarat, because "had it been made by Gujarat, it would likely have been stopped in New York in connection with an outstanding attachment order in another case . . . ."[1]  (Def. Nirma Ltd.'s Mem. of Law In Supp. of Mot. to Vacate Attachment and Dismiss Compl. 6.)

## II.  Discussion

### A.  Standard of Review

To obtain a maritime attachment, a plaintiff must comply with Supplemental Admiralty Rule B ("Rule B"), which states in relevant part:

> If a defendant is not found within the district, . . . a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property - up to the amount sued for - in the hands of garnishees named in the process . . . .  The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment.  The clerk may issue supplemental process enforcing the court's order upon application without further court order.

Fed. R. Civ. P. Supp. R. B(1)(a)-(b).

Rule E(4)(f) allows any person whose property has been attached pursuant to Rule B an

---

[1]The attachment that Gujarat and Nirma sought to circumvent was issued by a different judge from this district in *Thalatta Shipping Ltd. v. Gujarat Cheminex Ltd. & Nirma Ltd.*, No. 06 Civ. 3415 (DAB).  In that case, Nirma was voluntarily dismissed by the plaintiff (Doc. No. 6), but the attachment against Gujarat remains in place.

opportunity to appear before a district court to contest the attachment.  Rule E(4)(f) states, in

relevant part:

> Whenever property is arrested or attached, any person claiming an
> interest in it shall be entitled to a prompt hearing at which the
> plaintiff shall be required to show why the arrest or attachment
> should not be vacated or other relief granted consistent with these
> rules.

Fed. R. Civ. P. Supp. R. E(4)(f).  "Rule E(4)(f) clearly places the burden on the plaintiff to show

that an attachment was properly ordered and complied with the requirements of Rules B and E."

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 n.5 (2d Cir. 2006).  To

sustain an attachment, a plaintiff must show that it has fulfilled the "filing and service

requirements of Rules B and E" and that:  "1) it has a valid prima facie admiralty claim against

the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property

may be found within the district; and 4) there is no statutory or maritime law bar to the

attachment." *Id.* at 445 (footnote omitted).  If a plaintiff fails to demonstrate that it has met the

requirements of Rules B and E, the district court must vacate the attachment. *Id.* at 445.

Maritime plaintiffs, however, are not required to prove their case at this stage. *See Wajilam*

*Exps. (Sing.) Pte. Ltd. v. ATL Shipping Ltd.*, No. 05 Civ. 7955, 2006 WL 3019558, at *3

(S.D.N.Y. Oct. 23, 2006).

Attachments may otherwise only be vacated "in certain limited circumstances." *Aqua*

*Stoli*, 460 F.3d at 444.  A district court may vacate an attachment if the defendant shows that:

"1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could

obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or

3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment

or otherwise." *Id.* at 445 (footnote omitted).

"'Federal courts sitting in admiralty apply federal common law when examining corporate identity.'" *Wajilam Exps.*, 2006 WL 3019558, at *6 (quoting *Status Int'l S.A. v. M & D Mar. Ltd.*, 994 F. Supp. 182, 186 (S.D.N.Y. 1998)). When the plaintiff seeks to plead an alter ego theory, "'[a]ctual domination, rather than the opportunity to exercise control, must be shown.'" *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996) (quoting *Williams v. McAllister Bros. Inc.*, 534 F.2d 19, 21 (2d Cir. 1976)); *see also Wajilam Exps.*, 2006 WL 3019558, at *6. Applying the corporate law of New York, the Second Circuit has identified several factors that can be considered when alter ego status has been pleaded, to wit: (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of corporate entities; (6) the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arm's length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity; and (10) intermingling of property between the entities. *See Wajilam Exps.*, 2006 WL 3019558, at *8 (citing *MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 63 (2d Cir. 2001)).

B.  Analysis

Nirma contends that Plaintiff has not sufficiently pled that Nirma is Gujarat's alter-ego. Before the Court considers the sufficiency of the pleadings, the Court must resolve the Parties' dispute over the appropriate standard for evaluating the sufficiency of the Complaint. Plaintiff

argues that its burden is merely to show that it has alleged a "valid prima facie admiralty claim against the defendant . . . ." *Aqua Stoli*, 460 F.3d at 445. Under this test, the Court looks only to the Verified Complaint to determine whether Plaintiff has alleged a valid claim. Nirma argues that Plaintiff's burden is weightier than a prima facie showing. Nirma argues that Plaintiff must show that it has "reasonable grounds" for the attachment. *See Wajilam Exps.*, 2006 WL 3019558, at *2-3. Under this more exacting approach, the Court must look to the Verified Complaint and any evidence submitted by the Parties. *Id.* at *2.

For the following reasons, the Court will determine the sufficiency of Plaintiff's Verified Complaint under the prima facie test, rather than the reasonable grounds test. In *Aqua Stoli*, the Second Circuit held that "once a plaintiff has carried his burden to show that his attachment satisfies the requirements of Supplemental Rule B, a district court may vacate an attachment only upon [certain] circumstances . . . ." 460 F.3d at 436. The question presented here is: what does Plaintiff have to show in order to meet the requirements of Rule B? That question, however, was not directly before the *Aqua Stoli* court. *Id.* at 445 ("[T]he exact scope of a district court's vacatur power is not before us . . . .") Nonetheless, the Second Circuit, in its discussion of the standards for vacatur, stated that an attachment should issue if a plaintiff shows that, *inter alia*, "it has a valid prima facie admiralty claim against the defendants . . . ." *Id.* In so holding, the Second Circuit "reject[ed] the reasoning of the more recent district court decisions that have engaged in a broader Rule E(4)(f) inquiry." *Id.* Subsequently, lower courts in this District have taken the *Aqua Stoli* holding to mean that a plaintiff's burden at a Rule E(4)(f) hearing is to show only that it has a valid prima facie maritime claim against the defendant. *See Secil Maritima U.E.E. v. Malev Shipping, et al.*, No. 06 Civ. 6345 (S.D.N.Y. Oct. 10, 2006) (transcript of Rule

6

E(4)(f) hearing denying vacatur motion); *Route Holding Inc. v. Int'l Oil Overseas Inc.*, No. 06 Civ. 3428 (S.D.N.Y. Sept. 29, 2006) (Order denying vacatur of maritime attachment); *Tide Line, Inc. v. Eastrade Commodities, Inc.*, No. 06 Civ. 1979 (S.D.N.Y. Aug. 15, 2006) (Order vacating attachment); *but see Wajilam Exps.*, 2006 WL 3019558, at *3 n.5 (arguing that the "reasonable grounds" standard survived *Aqua Stoli*).

The Second Circuit has not opined on what a plaintiff must show to make out a "prima facie admiralty claim."  Chief Judge Wood, in *Tide Line*, explained that the plaintiff is not required to produce evidence at this stage to support its allegations and that any challenge must be based on the sufficiency of the complaint.  *See Tide Line*, No. 06 Civ. 1979, Aug. 15, 2006 Order at 17.  Chief Judge Wood's analysis of this issue is consistent with the limited inquiry contemplated by *Aqua Stoli* and comports with a basic definition of the term "prima facie."[2]  Therefore, this Court will look only to Plaintiff's pleadings, and not to any evidence submitted by the Parties, to determine whether Plaintiff has made a legally sufficient claim for piercing the corporate veil.

The next question the Court must consider is whether Plaintiff's alter-ego allegations against Nirma state a prima facie admiralty claim.  The Court holds that Plaintiff has stated a valid claim against Defendant.  Plaintiff has essentially made three allegations against Nirma: first, that Nirma has in this case, and in other cases, made payments on behalf of Gujarat to third parties (Verified Compl. ¶ 27); second, that "there existed such unity of ownership and interest . . . that no separation exists between" Nirma and Gujarat, such that the "corporate form has been

---

[2]Black's Law Dictionary defines the term "prima facie" as "sufficient to establish a fact or raise a presumption unless disproved or rebutted."  Black's Law Dictionary 1228 (8th ed. 2004).

disregarded" (*id.* ¶ 25); and third, that Nirma has "dominated and used" Gujarat "for their [sic] own purposes such that there us no meaningful difference between the three entities and there has been an intermingling of funds between the several entities" (*id.* ¶ 28).  Both factors are found among the list of factors a court may consider when alter ego status has been pled, *see MAG Portfolio*, 268 F.3d at 63, and are sufficient to state a valid admiralty claim.

In addition, the decisions of other courts in this District suggest that Plaintiff's pleadings are sufficient to resist vacatur of the attachment.  The *Route Holding* court and the *Secil Maritima* court both upheld similar alter-ego allegations against the defendant's motion to vacate.  *See Secil Maritima*, No. 06 Civ. 6345 (Oct. 10, 2006 hearing transcript); *Route Holding*, No. 06 Civ. 3428 (Sept. 29, 2006 Order).  In *Secil Maritima*, Judge Hellerstein upheld the attachment because the verified complaint alleged that Malev is "merely a shell corporation through which Evalend conducts its business" and that Evalend and Plumfield "dominate and disregard Malev's corporate form . . . ."  *Secil Maritima*, No. 06 Civ. 6345, Oct. 10, 2006 Hr'g Tr. 3:22-23, 4:1-3.  And in *Route Holding*, Judge Castel upheld the attachment under the prima facie standard of review, because the plaintiff alleged that MWS "dominated and controlled" IOOI and that MWS was paying an arranging for others to satisfy IOOI's debts.  *Route Holding*, No. 06 Civ. 3428, Sept. 29, 2006 Hr'g Tr. 12:14-24.

### III.  Conclusion

For the reasons stated above, Nirma's Motion to Vacate the Attachment and Dismiss the

Complaint is DENIED.  The Clerk of the Court is directed to terminate the Motion.

SO ORDERED.

Dated:       March 15, 2007
             New York, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

9

Service List:

Owen Francis Duffy, III, Esq.
Chalos, O'Connor & Duffy
366 Main Street
Port Washington, NY 11050-3120
(516) 767-3600
Fax: (516) 767-3605
*Counsel for Plaintiff*

Francis H. McNamara, Esq.
Cardillo & Corbett
29 Broadway
New York, NY 10006
(212) 344-0464
Fax: (212) 797-1212
*Counsel for Defendant Nirma Ltd.*